## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LISA B.,[1] | : | Case No. 3:20-cv-00452 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

### I.     INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits in February 2014 and alleged a disability onset date of March 16, 2013. Plaintiff's claim was denied initially and upon reconsideration. After a hearing, the Administrative Law Judge (ALJ) issued a partially favorable decision on July 27, 2016. The ALJ concluded that Plaintiff was not disabled before April 4, 2016 but was disabled after that date, due to a change in her age category. (Doc. 10-2, PageID 63.) After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.

This Court reversed the ALJ's decision and remanded the case under Sentence Four of 42 U.S.C. § 405(g). (Doc. 10-12, PageID 1193-1201.) The Court held that the

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

ALJ erred when weighing the opinion of consultative psychologist Katherine Myers, Psy.D., by (1) failing to consider objective medical evidence that supported Dr. Myers's opinions regarding attention, concentration and stress tolerance; and (2) failing to address Dr. Myers's opinion regarding absenteeism. (*Id*., PageID 1198-99.) The Court further held that the ALJ erred when weighing the opinions of state agency psychologists Karen Terry, Ph.D. and Irma Johnston, Psy.D., who opined that Plaintiff is limited to a work environment with "relaxed production demands." (*Id*., PageID 1199-1200.) Although the ALJ afforded their opinions great weight, he did not include this limitation in the RFC, instead limiting Plaintiff to "no fast-paced production work or jobs which involved strict production quotas." (*Id*., PageID 1199.) This Court held the error was not harmless:

> The ALJ's error here is not harmless because the VE [vocational expert] testified at the hearing that an employee with the limitation identified by Drs. Terry and Johnston – i.e., "relaxed production demands" – would likely need an accommodation that is not "typically afforded to workers at these types of [unskilled] jobs." An employee with the ALJ's limitation – i.e., "no fast-paced production" – however, would not.

(*Id*., PageID 1200 (citation omitted).)

On remand, the ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act prior to April 4, 2016. (Doc. 10-11, PageID 1117.) The ALJ's decision became final, and Plaintiff subsequently filed this action. This Court has jurisdiction to review the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

2

Court to affirm the non-disability finding prior to April 4, 2016. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 10).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since March 16, 2013. At that time, she was forty-six years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 10-11, PageID 1115-28), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

3

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.    THE ALJ'S DECISION

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:     Plaintiff did not engage in substantial gainful activity during the period at issue from the alleged onset date of March 16, 2013, to April 4, 2016.

Step 2:     She had the severe impairments of degenerative joint disease of the left knee, mild trochanteric bursitis of the hips, mild obesity, lumbar spine degenerative disc disease, and depression.

Step 3:     She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do
despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as
defined in 20 CFR § 404.1567(a), subject to the following
limitations: "No more than occasional stooping. No more than
occasional climbing of ramps and stairs. No crouching, crawling,
kneeling, or use of the left lower extremity for pushing, pulling, or
the operation of foot controls, or climbing of ladders, ropes, or
scaffolds. No work around hazards such as unprotected heights or
dangerous machinery. [Plaintiff] is limited to performing simple,
repetitive tasks with a specific vocational preparation level of 1 or 2.
No more than occasional and superficial contact, as defined, with
supervisors and co-workers; no contact with the general public. No
assembly line work, fast-paced production work, or jobs which
involve strict production quotas. [Plaintiff] is limited to performing
jobs in which there is very little, if any, change in the job duties or
the work routine from one day to the next."

She was unable to perform any of her past relevant work.

Step 5:    During the period at issue, considering Plaintiff's age, education,
work experience, and residual functional capacity, there were jobs
that existed in significant numbers in the national economy that she
could have performed.

(Doc. 10-11, PageID 1118-28.) These findings led the ALJ to conclude that Plaintiff did

not meet the definition of disability and so was not entitled to benefits prior to April 4,

2016. (*Id.*, PageID 1128.)

The mental limitations in the RFC changed only slightly from the ALJ's initial

decision in 2016. Specifically, the ALJ added two limitations: (1) superficial contact with

coworkers and supervisors, and (2) no assembly line work. (*Compare* Doc. 10-2, PageID

57 (July 2016 RFC) *with* Doc. 10-11, PageID 1122 (July 2020 RFC).) The ALJ defined

"superficial contact" as "retaining the ability to receive simple instructions, ask simple

questions, and receive performance appraisals, but as unable to engage in more complex

6

social interactions, such as persuading other people or resolving interpersonal conflicts."

(Doc. 10-11, PageID 1122.)

The ALJ reconsidered the opinions of Dr. Myers, as directed by the Court, but

declined to give those opinions any additional weight. The ALJ explained:

> The undersigned has reviewed the relevant opinion and medical evidence, and declines to give any increased weight to Dr. Myers' opinion. Dr. Myers' opinion statements are inconsistent with her own more clinical findings. Although, as noted in the District Court decision, "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" … the results of Dr. Myers' own mental status testing should be effectively able to "stand in" for other objective findings. As discussed above, Dr. Myers opined that the claimant "is likely to have some difficulties with job-related tasks," but her more objective observations indicated that the claimant was able to follow instructions requiring average intellectual functioning, and that the claimant achieved average performance results on memory and recall tasks. Although the claimant's self-reported abilities and limitations can be instructive in analyzing the severity of her mental health impairments, the fact that Dr. Myers appears to have substituted the claimant's report for Dr. Myers' *own* objective observations presents a contradiction that leads the undersigned to afford her opinion limited weight. This pattern continues throughout Dr. Myers' analysis of the claimant's mental health-based work-related functional limitations. Dr. Myers noted that the claimant's irritability "may negatively impact her interpersonal interactions," but that she "is somewhat likely to respond appropriately to coworkers in a work setting." Dr. Myers further noted that the claimant has the common sense necessary to engage in ordinary tasks, but that she has a poor stress tolerance and insufficient motivation to regularly attend work. Her report is also inconsistent with Dr. Jones' opinion in some key areas. Where Dr. Jones observed the claimant as not being easily distracted, Dr. Myers opined that the claimant is only "fleetingly able to concentrate on questions and tasks." Where these reports conflict, the undersigned gives more weight to the opinion that is more generally internally consistent, namely that of Dr. Jones, over Dr. Myers' report, which is characterized by internal inconsistencies. In short, the undersigned does not discount Dr. Myers' report out of hand simply because she based some of her analysis of [sic] the claimant's subjective complaints, but affords it limited weight because of its repeated pattern of internal inconsistencies and contradictions.

(Doc. 10-11, PageID 1125 (citations omitted).) In his Step 3 analysis, however, the ALJ relied on the opinions of Dr. Jones and Dr. Myers, as well as objective medical evidence and Plaintiff's subjective statements, to conclude that Plaintiff is moderately limited in the areas of concentration, persistence, and pace. (*Id.*, PageID 1120-21.)

The ALJ acknowledged Dr. Myers' opinion that Plaintiff "may have periods of absenteeism because of mental health difficulties, including having poor motivation and energy." (Doc. 10-11, PageID 1121.) However, despite the Court's directive that the ALJ explain his consideration of Dr. Myers' opinion regarding absenteeism when formulating the RFC, the ALJ did not do so.

The ALJ concluded that Plaintiff has only a mild limitation in her ability to adapt or manage herself, including handling workplace stresses. The ALJ reasoned:

> Dr. Jones assessed the claimant as having sufficient judgment and common sense reasoning to live independently and make important decisions. Dr. Jones went on to opine that, based on the claimant's described reactions to work pressures, "there do appear to be some limitations in her ability to consistently cope appropriately with common workplace pressures." Dr. Myers concurred with Dr. Jones, noting that the claimant "appears to have adequate common sense reasoning and judgment," but opined that the claimant has a poor stress tolerance, and her lack of social support limits her ability to overcome or improve on this deficit. In the function report, the claimant stated that she does not handle stress or changes in her routine well. At the original hearing, the claimant testified that she had regular crying spells, which reduced in frequency to monthly with an increase in her medication. During the June 2020 hearing, the claimant testified that she continues to have crying spells, and has multiple weekly panic attacks, both at home and in public. The claimant's insight and judgment have been assessed as good or normal during both medical and mental health examination and treatment sessions. She has been assessed as having only fair or limited insight and judgment during most of her mental health treatment sessions, however. While acknowledging the claimant's apparent limitations in this area, the undersigned finds that the fact that both Dr. Jones and Dr. Myers found the claimant's common sense reasoning and

8

judgment to be adequate for pursuing ordinary activities of daily living
indicates that she has only a slight limitation in her ability to function in
this area.

(Doc. 10-11, PageID 1121 (citations omitted).)

Finally, the ALJ did not change the original RFC limitation of "no fast-paced

production work, or jobs which involve strict production quotas," despite the opinions of

Drs. Terry and Johnston that Plaintiff should be limited to a work environment with

"relaxed production demands." The ALJ explained this decision as follows:

Regarding the opinions of Dr. Terry and Dr. Johnston, the undersigned
continues to give great weight to their opinions. The District Court took
issue primarily with the fact that the undersigned effectively interpreted the
recommendation that the claimant be subject to "relaxed production
demands" as not totally eliminating competitive work, as vocational expert
Brian Womer testified at the original hearing that an individual who
required "relaxed production demands" would need to have this limitation
be accommodated in unskilled work. It appears to the undersigned th[at]
Dr. Terry and Dr. Johnston have a different interpretation of "relaxed
production demands" from Mr. Womer, as the claimant was found to be not
disabled at both DDD review levels despite this recommended limitation.
The undersigned notes that a requirement for "relaxed production demands"
should be fully accommodated by the residual mental functional capacity
limitation restricting the claimant from work that includes strict production
quotas, assembly-line work, or fast-paced work requirements. These
limitations have been imposed with the expectation that they will
sufficiently reduce work stress to a level that the claimant can manage,
despite her limitations. As discussed in more detail below, vocational
expert Charlotta J. Ewers effectively concurs with this assessment, finding
more than 225,000 jobs available to the claimant in the national economy.

(Doc. 10-11, PageID 1125-25 (citations omitted).)

V.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred by: 1) reaffirming his prior decision to assign

little weight to the opinions of Dr. Myers; (2) reaffirming his prior decision to omit the

9

limitation of "relaxed production demands" in the RFC; and (3) ignoring the Court's directive to consider Plaintiff's other assignments of error regarding the ALJ's analysis of the opinions of Dr. Jones, her treating mental health nurse practitioner, and her counselor. (Doc. 11, PageID 1371-76.) These arguments are well-taken. Further, the ALJ erred by failing to address Dr. Myers' opinion regarding absenteeism.

Accordingly, the ALJ's decision is reversed. On remand, the ALJ is ordered to: (1) reconsider the weight given to Dr. Myers' opinions and provide a meaningful explanation to facilitate judicial review; (2) in light of the "great weight" that the ALJ gave to the opinions of Drs. Terry and Johnston, either include their opinion that Plaintiff is limited to "relaxed production demands" in the RFC or provide a meaningful explanation, supported by substantial evidence, for omitting it; (3) address Plaintiff's previous assignments of error regarding the ALJ's July 2016 analysis of the opinions of Dr. Jones, Plaintiff's treating mental health nurse practitioner, and Plaintiff's counselor; and (4) address Dr. Myers' opinion regarding absenteeism, as previously directed by the Court.

## A.    The ALJ Again Erred In His Analysis Of Dr. Myers' Opinions

In its prior decision, the Court discussed Dr. Myers' opinions that Plaintiff "is likely to have some difficulties with job related tasks[,]" is "likely to show a pattern of periods of time away from work[,]" and that "her stress tolerance appears poor." (Doc. 10-12, PageID 1198 (citation omitted).) The ALJ had previously explained that he gave these opinions "less weight" because, in his view, Dr. Myers based them on an "uncritical acceptance of the claimant's subjective reports." (*Id*. (citation omitted).)

10

The Court found "multiple errors in the ALJ's weighing of Dr. Myers' opinion." (Doc. 10-12, PageID 1198.) First, since a psychiatric impairment cannot be documented as easily as a physical impairment, "the report of a psychiatrist should not be rejected simply because of … the absence of substantial documentation" supporting a claimant's self-reported history. (*Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).) Second, the ALJ "erred in failing to consider the objective medical evidence supportive of Dr. Myers' opinion." (*Id.*) The Court stated: "Most notably, Dr. Myers documented [1] that Plaintiff 'does not appear to have adequate social supports in place to effectively cope with additional stressors'; [2] that Plaintiff was 'fleetingly able to concentrate on questions and tasks'; and [3] that she 'appeared depressed with congruent affect.'" (*Id.*) The Court concluded that the ALJ's non-disability finding was unsupported by substantial evidence. (*Id.*, PageID 1200.) The Court remanded this matter to the Commissioner "for proceedings consistent with this opinion." (*Id.*, PageID 1201.)

On remand, the ALJ again discounted Dr. Myers' opinions, reasoning that her report is internally inconsistent and her opinions are unsupported. (Doc. 10-11, PageID 1125 ("In short, the undersigned does not discount Dr. Myers' report out of hand simply because she based some of her analysis of [sic] the claimant's subjective complaints, but affords it limited weight because of its repeated pattern of internal inconsistencies and contradictions.").) While the ALJ considered some objective medical evidence when explaining his evaluation of Dr. Myers' opinions, the ALJ did not discuss her findings that Plaintiff lacks adequate social supports to cope with stressors, and that she appeared depressed with congruent effect—both of which were cited by this Court.

11

The Court concludes that the ALJ's finding that Dr. Myers' opinions are entitled to little or limited weight is not supported by substantial evidence. First, the ALJ's analysis of Dr. Myers' opinions is internally inconsistent and not meaningfully explained. Second, the ALJ's finding that Dr. Myers' report is internally inconsistent is not supported by substantial evidence. Third, the ALJ's finding that Dr. Myers' opinions are entitled to only limited weight is not supported by substantial evidence. On remand, the ALJ should reconsider the weight given to Dr. Myers' opinions, consistent with this decision, and provide a meaningful explanation to facilitate judicial review.

### 1. *The ALJ's analysis of Dr. Myers' opinions is internally inconsistent and not meaningfully explained*

Although the ALJ stated that he gave Dr. Myers' opinions only limited weight, it appears upon a cursory review of his decision that the ALJ relied on some of Dr. Myers' opinions. A closer review of the ALJ's analysis shows, however, that it is internally inconsistent. Remand is necessary to facilitate meaningful judicial review.

The ALJ found that Plaintiff is moderately limited in her ability to concentrate, persist, or maintain pace. (Doc. 10-11, PageID 1120.) To support this conclusion, the ALJ relied in part on the opinions of Dr. Jones **and Dr. Myers**, which the ALJ portrayed as being consistent with each other:

> Dr. Jones noted the claimant's complaints of a decreased ability to maintain attention and concentration …. Dr. Jones did not observe any distracted behavior, however, and noted that the claimant was able to follow the thread of their conversation. Based on this, Dr. Jones opined that the claimant's mental and physical impairments "would negatively impact her ability to consistently maintain appropriate attention and maintain adequate persistence and pace to perform work tasks." Dr. Myers observed the claimant as "fleetingly able to concentrate on questions and tasks," and

12

> opined that she "may show work pace slower to that of her work peers." Dr.
> Myers further opined that the claimant may have periods of absenteeism
> because of mental health difficulties, including having poor motivation and
> energy…. The undersigned finds that this represents only a fair ability to
> function in this area.

(Doc. 10-11, PageID 1121 (citations omitted).)

Despite relying on Dr. Myers' opinions and portraying them as consistent with Dr.

Jones' opinions, however, the ALJ later found that these same opinions were inconsistent

with each other, and relied on that finding to assign little weight to Dr. Myers' opinion:

> Where Dr. Jones observed the claimant as not being easily distracted, Dr.
> Myers opined that the claimant is only "fleetingly able to concentrate on
> questions and tasks." Where these reports conflict, the undersigned gives
> more weight to the opinion that is generally internally consistent, namely
> that of Dr. Jones, over Dr. Myers' report, which is characterized by internal
> inconsistencies.

(Doc. 10-11, PageID 1125 (citations omitted).)

The Court is unable to reconcile the ALJ's disparate conclusions regarding these

opinions. Further, it is unclear whether the ALJ gave limited weight, or more than limited

weight, to Dr. Myers' opinion that Plaintiff is only "fleetingly able to concentrate on

questions and tasks" when finding that Plaintiff is moderately limited in her ability to pay

attention, concentrate and maintain pace. These errors warrant reversal and remand.

### 2. *The ALJ's finding that Dr. Myers' report is internally inconsistent is not supported by substantial evidence*

The ALJ reasoned that Dr. Myers' report is inconsistent in three respects: (1) Dr.

Myers opined that Plaintiff "is likely to have some difficulties with job-related tasks due

to mental health problems," but found that Plaintiff was able to follow directions that

require average intellectual functioning, could understand and follow directions, and had

13

average performance on memory and recall tasks (Doc. 10-11, PageID 1120, 1125); (2) "Dr. Myers noted the claimant's report of ongoing irritability, 'which may negatively impact her interpersonal interactions,' but opined that the claimant 'is somewhat likely to respond appropriately to coworkers in a work setting'" (*id*.); and (3) Dr. Myers (and Dr. Jones) opined that Plaintiff was limited in her ability to cope with workplace stressors, but also opined that Plaintiff had adequate judgment and common sense reasoning to live independently (*id*., PageID 1121, 1125). The Court concludes that these purported inconsistencies are not supported by substantial evidence.

As to the first purported inconsistency, it is entirely possible to display average intellectual functioning and memory, and be able to understand and follow directions, while still having mental health problems that interfere with the ability to perform job related tasks. Dr. Myers found that Plaintiff's mood "appeared depressed with congruent affect." (Doc. 10-7, PageID 567.) Dr. Myers stated that Plaintiff "reported the following symptoms of depression: variable appetite, sleep disturbance, crying spells, decreased energy … anhedonia, irritability…. poor attention and concentration. She noted there have been times where she does not get out of bed for three days and did not eat in more than one day." (*Id*.) Plaintiff also reported the following symptoms of anxiety: "frequent worry, feeling 'stressed,' panic attacks (symptoms described as becoming very hot, sweaty)." (*Id*.) These symptoms of depression and anxiety are "mental health problems" that plainly could interfere with the ability to perform job related tasks. Thus, the ALJ's first purported inconsistency is not supported by substantial evidence.

The ALJ's second purported inconsistency is also not supported by substantial evidence. Dr. Myers explained her conclusion that Plaintiff "is somewhat likely to respond appropriately to coworkers in a work setting" by linking that opinion directly to Plaintiff's statement that historically she has had "no interpersonal problems with supervisors, coworkers, and customers." (Doc. 10-7, PageID 569.) Dr. Myers then stated: "She does report ongoing irritability which may negatively impact her interpersonal interactions." (*Id*.) Dr. Myers' opinions are based on different data points (and time periods), and so are not inconsistent with each other.

Finally, there is no apparent inconsistency between Dr. Myers' opinion that Plaintiff has a limited ability to cope with stressors in the workplace, and her opinion that Plaintiff has adequate judgment and common sense reasoning to live independently. When assessing Plaintiff's ***insight and judgment***, Dr. Myers found that Plaintiff "appears to have adequate common sense reasoning and judgment…. She appears cognitively and psychologically capable of living independently and of making decisions about her future." (Doc. 10-7, PageID 568.) Later, when asked to describe Plaintiff's abilities and limitations in ***responding appropriately to work pressures*** in a work setting, she opined:

> Based on her self reported history, the claimant is unable to respond appropriately to work stressors and situations. The claimant is currently experiencing significant stressors, and does not appear to have adequate social supports in place to effectively cope with additional stressors. She reports diminished functioning, poor motivation, and is mentally preoccupied by her physical problems. Her stress tolerance appears poor.

(Doc. 10-7, PageID 569.) Simply put, Dr. Myers' opinions on these issues (insight and judgment versus adapting to work pressures) address different areas of functioning.

15

For these reasons, the ALJ's findings that Dr. Myers' opinions are internally inconsistent are unsupported by substantial evidence. This error warrants reversal.

### 3. *The ALJ's finding that Dr. Myers' opinion is entitled to only limited weight is not supported by substantial evidence*

As discussed above, Dr. Myers supported her opinions with a number of clinical observations (which constitute objective medical evidence) and Plaintiff's statements (which, as the Court noted in its prior decision, do not provide a reason to discount Dr. Myers' opinions). Despite the Court's direction that the ALJ consider this evidence on remand when he analyzed the weight assigned to Dr. Myers' opinions, the ALJ did not follow the Court's instruction. Instead, the ALJ relied on a new rationale—purported inconsistencies in Dr. Myers' opinions—to justify his decision to assign little weight to those opinions. (Doc. 10-11, PageID 1125.)

The Court has held that the ALJ's findings regarding purported inconsistencies in Dr. Myers' opinion are not supported by substantial evidence. Therefore, his finding that Dr. Myers' opinion is entitled to only limited weight is also not supported by substantial evidence. Reversal is therefore required. On remand, the ALJ is again directed to consider the evidence in the record, including but not limited to the evidence cited in Dr. Myers' opinion, when determining what weight to assign her opinion.

### B. The ALJ's Reasons For Omitting "Relaxed Production Demands" From The RFC Are Not Supported By Substantial Evidence

In its prior decision, the Court held that the ALJ erred by giving great weight to the opinions Dr. Terry and Dr. Johnston and yet declining to incorporate their opinions that Plaintiff is limited to a work environment with "relaxed production demands" into

16

the RFC. (Doc. 10-12, PageID 1199-1200.) Instead, the ALJ limited Plaintiff to "no fast-paced production work or jobs which involved strict production quotas." (*Id*., PageID 1199.) This Court explained that the error was not harmless because a vocational expert, Brian Womer, testified that an employee limited to relaxed production demands would likely require an accommodation not "typically afforded to workers at these types of [unskilled] jobs." (*Id*., PageID 1200.) By contrast, an employee limited to "no fast-paced production" would not require such an accommodation. (*Id*.)

On remand, the ALJ continued to give great weight to the opinions of Dr. Terry and Dr. Johnston, but declined to include the limitation of relaxed production demands in the RFC. (Doc. 10-11, PageID 1122, 1125.) The ALJ gave two reasons: (1) a perceived conflict between Drs. Terry and Johnston, and Mr. Womer, regarding the "interpretation" of the term "relaxed production demands"; and (2) a finding that there is no meaningful distinction between a limitation to relaxed production demands and the limitations incorporated into the RFC. The ALJ's findings are not supported by substantial evidence.

As to the first reason, the ALJ stated: "It appears to the undersigned th[at] Dr. Terry and Dr. Johnston have a different interpretation of 'relaxed production demands' from Mr. Womer, as the claimant was found to be not disabled at both DDD review levels despite this recommended limitation." (Doc. 10-11, PageID 1126.) As Plaintiff points out, however, Drs. Terry and Johnston did not make the decision to find Plaintiff not disabled at the administrative review levels. There is therefore no evidence of any disagreement between Mr. Womer and Drs. Terry and Johnston. Accordingly, this stated reason for omitting the limitation from the RFC is not supported by substantial evidence.

17

As to the second reason, the Court previously explained that Mr. Womer's testimony established a very important distinction between the limitation of "relaxed production demands," which would require an accommodation not typically available for unskilled work, and the limitations incorporated by the ALJ in the RFC. While the ALJ apparently disagreed, the ALJ cited no evidence to support his conclusory statement that "a requirement for 'relaxed production demands' should be fully accommodated by the … limitation restricting the claimant from work that includes strict production quotas, assembly-line work, or fast-paced work requirements." (Doc. 10-11, PageID 1125.) And although the ALJ claimed that a different vocational expert, Charlotta Ewers, "effectively concurs with this assessment" (*id*.), the ALJ cited no testimony or evidence from Ms. Ewers on this point, and the Court found none. (*See* Doc. 10-11, PageID 1153-61.)

Accordingly, the ALJ's rationale for omitting the limitation of relaxed production demands from the RFC, despite giving great weight to the opinions of Drs. Terry and Johnston, is not supported by substantial evidence. On remand, the ALJ should, in light of the "great weight" he gave to the opinions of Drs. Terry and Johnston, either include their opinion that Plaintiff is limited to "relaxed production demands" in the RFC or provide a meaningful explanation, supported by substantial evidence, for omitting it.

C.     **The ALJ Erred By Ignoring The Court's Directive To Consider The Plaintiff's Assignments Of Error Regarding The ALJ's Analysis Of Certain Other Medical Opinions**

It is undisputed that the ALJ did not consider Plaintiff's other assignments of error challenging his analysis of the opinions of Dr. Jones, Plaintiff's treating mental health nurse practitioner, and her counselor. Astonishingly, Defendant argues that the Court

should excuse its failure because (1) Plaintiff waived her argument that the ALJ erroneously failed to consider these opinions, (2) "[t]he evidence shows that the ALJ was inadvertently unaware of the court's directive," and (3) Plaintiff was not prejudiced by the error because "[t]he Court, in its previous order, did not articulate any errors in the analysis of such opinions and Plaintiff has not cited any." (Doc. 14, PageID 1388.)

The Court need not, and will not, excuse the ALJ's failure to comply with the Court's prior order. Defendant's waiver argument is unexplained and unexplainable. Defendant's claim that the ALJ was unaware of the Court's prior order is inexplicable, given that the Court served its order on the Commissioner's attorneys. And Plaintiff was plainly prejudiced by the failure because if the ALJ had considered the assigned errors regarding the other medical opinions, then he may have reached a different result.

The Court should not need to admonish the Defendant that every litigant, even the Commissioner, must follow this Court's lawful orders unless those orders are appealed and reversed. Defendant did not appeal the Court's prior order. It was therefore bound to follow it. And if the Commissioner needed to provide copies of Plaintiffs' Statement of Errors and Reply brief in the prior case to the ALJ so that the ALJ could comply with the Court's directive to consider Plaintiffs' other arguments, the Commissioner should have done so. What the Commissioner should not do is argue that its failure to comply with the Court's order somehow erased the Commissioner's obligation to comply with it.

So that there is no misunderstanding, the Court will reiterate its prior instruction:

Plaintiff argues that the ALJ erred in (1) weighing the opinions of the state agency's consultants; and (2) weighing the opinion of Plaintiff's treatment providers. Agreeing with Plaintiff's first assignment of error, ***the***

19

> *undersigned does not reach Plaintiff's second argument, but instead*
> *directs the ALJ to consider the issue on remand.*

(Doc. 10-12, PageID 1196 (emphasis added).) On remand, the ALJ is again ordered to

comply with this instruction.

### D. The ALJ Erred By Ignoring The Court's Directive To Consider Dr. Myers' Opinion Regarding Absenteeism

In its prior decision, the Court held that the ALJ erred by "entirely omit[ting] from

his discussion" Dr. Myers' opinion regarding Plaintiff's absenteeism, and that the error

required reversal because the vocational expert testified that an absence of two days per

month would require a finding that Plaintiff is disabled. (Doc. 10-12, PageID 1199.) The

Court reminded Defendant that the ALJ is required to address all of Dr. Myers' opinions

and to articulate, at some level, his analysis to facilitate meaningful judicial review. (*Id.*)

Upon remand, the ALJ again failed to address Dr. Myers' opinion regarding

absenteeism. The ALJ's failure to follow this Court's order is perplexing, since he did

solicit testimony on the issue from vocational expert Charlotta Ewers during the second

hearing. Specifically, the ALJ asked Ms. Ewers to identify the effect of absenteeism at a

rate of three times a month, and she testified that "in [her] vocational opinion [she] would

be unable to identify competitive employment." (Doc. 10-11, PageID 1156-57.) Asked

about the effect of being absent twice a month, she explained that her opinion would

remain the same: "That would equate to one full calendar month's absenteeism per work

year. I would be unable to identify competitive employment." (*Id.*, PageID 1157.)

The ALJ's failure to follow the Court's order constitutes plain error. On remand,

the ALJ is again ordered to address Dr. Myers' opinion regarding absenteeism.

## VI.    CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

The ALJ's apparent resistance to following this Court's orders makes this issue (i.e., remanding versus awarding benefits) a close call. Nevertheless, the Court will give the Defendant a final opportunity to comply with this Court's orders. The Court therefore remands this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for additional proceedings consistent with this decision.

On remand, the ALJ is **ORDERED** to: (1) reconsider the weight given to Dr. Myers' opinions and provide a meaningful explanation to facilitate judicial review; (2) in light of the "great weight" that the ALJ gave to the opinions of Drs. Terry and Johnston, either include their opinion that Plaintiff is limited to "relaxed production demands" in the RFC or provide a meaningful explanation, supported by substantial evidence, for omitting it; (3) address Plaintiff's previous assignments of error regarding the ALJ's July 2016 analysis of the opinions of Dr. Jones, Plaintiff's treating mental health nurse practitioner, and Plaintiff's counselor; and (4) address Dr. Myers' opinion regarding

absenteeism, as previously directed by the Court. The ALJ should further develop the record as necessary, particularly as to the opinions of the State agency psychological consultants and consultative examiner, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. 11) is GRANTED;

2.  The Court REVERSES the Commissioner's non-disability determination;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge